## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ELIZABETH RICH | : CIVIL ACTION |
|---|---|
| | : |
| v. | : NO. 18-3744 |
| | : |
| COMMISSIONER OF THE SOCIAL | : |
| SECURITY ADMINISTRATION | : |

## MEMORANDUM

**KEARNEY, J.**                                                             **September 23, 2019**

We today face the procedural issues addressed in our September 11, 2019 Order and Memorandum in *Cortese v. Commissioner of Social Security:*[1] what happens when an administrative law judge for the Social Security Administration not properly appointed by the President under the Appointments Clause correctly evaluates the medical records and fully describes substantial evidence warranting denial of a disability claim? In April 2019, we first analyzed the constitutional challenge in *Culclasure v. Commissioner of Social Security* and remanded to the Commissioner for a hearing before a properly appointed Administrative Law Judge. The Commissioner appealed our decision in *Culclasure* as well as others. Our Court of Appeals is now considering consolidated appeals focusing on the Appointments Clause issues. Consistent with *Culclasure*, we today remand based on the lack of a properly appointed Administrative Law Judge. Unlike *Culclasure* but like *Cortese,* today's case also challenges the administrative law judge's findings leading to a denial of disability benefits. After careful study of the extensive record and the administrative law judge's detailed findings, the claimant today did not show the challenged decision lacks substantial evidence or should be reversed with an award of benefits. So while we remand consistent with *Culclasure*, we will stay the remand until our Court of Appeals resolves the consolidated appeals on the Appointments Clause issues.

## I.    Background from the administrative record

Elizabeth Rich sought disability insurance benefits alleging, as of a disability onset date of February 18, 2015,[2] she suffers from fibromyalgia, anxiety and panic attacks, depression, interstitial cystitis, pelvic floor dysfunction, migraines, irritable bowel syndrome, chronic fatigue syndrome, sinusitis, and acid reflux.[3] The Social Security Administration denied her claim on July 22, 2015.[4] At Ms. Rich's request, Social Security Administrative Law Judge Jay Marku held a hearing on April 12, 2017 with Ms. Rich, her counsel, and a vocational expert.[5] By April 12, 2017, the Commissioner had not ratified the appointments of the Social Security Administration's administrative law judges, including Administrative Law Judge Jay Marku.[6] But Ms. Rich did not challenge Administrative Law Judge Marku's fitness to adjudicate her claim or to hold a hearing.

At the April 12, 2017 hearing, Ms. Rich swore to "pain from [her] head to [her] toes."[7] She swore she stopped working in February 2015 because of physical pain from sitting[8] and confusion.[9] She swore she can sit or stand for about "ten or 15 minutes."[10] She swore her problems with her hand cause her to "lose [her] grip and [she has] trouble typing and holding a pencil or a pen, lifting."[11] She swore she can't button her shirts.[12] She swore she can only lift "probably four to five pounds."[13] She swore her neck pain prevents her from frequently driving because "from the middle of [her] head down [her] back is the worst and... is 24/7."[14] She swore she suffers from panic attacks a "couple of times a week."[15] She swore she was "nonfunctional" for two weeks after her brother passed away and she "couldn't get up" because her back hurt.[16] Ms. Rich swore she drives a couple times a week,[17] can walk less than half a mile,[18] cooks simple meals,[19] cleans the house,[20] and does laundry.[21] She also swore she helps her 84-year-old father who has lived

with her since he got in a car accident.[22] Ms. Rich also submitted reports from two doctors[23] and over 700 pages of medical records.[24]

On July 18, 2017, Administrative Law Judge Marku denied Ms. Rich's application for disability insurance benefits.[25] Administrative Law Judge Marku found Ms. Rich had several "severe impairments," including cervical degenerative disease and radiculopathy, fibromyalgia, interstitial cystitis, pelvic floor dysfunction, depressive disorder, generalized anxiety disorder, panic attack disorder, and social phobia.[26] He also found Ms. Rich unable to perform her past relevant work, following the testimony of a vocational expert.[27] But Administrative Law Judge Marku found Ms. Rich had the residual functional capacity to perform light work and denied her claim.[28]

Administrative Law Judge Marku made specific findings as to each claimed medical condition after review of Ms. Rich's extensive medical records. He did not find Ms. Rich's stated symptoms "entirely consistent" with the medical record evidence.[29] Administrative Law Judge Marku found various examinations did not support Ms. Rich's complaints of numbness and tingling in the hands.[30] He found fibromyalgia, degenerative disc disease, and evidence of scoliosis caused Ms. Rich's neck and back pain.[31] But Administrative Law Judge Marku cited Ms. Rich's July 2015 physical exam where she "displayed full range of motion" and demonstrated zero out of eighteen trigger points.[32] For the pelvic and bladder issues, Administrative Law Judge Marku found despite "a long history of interstitial cystitis and pelvic floor dysfunction dating back to approximately 2000,"[33] Ms. Rich does not experience pain or burning with urination and has "nothing more than tenderness to palpation of the bladder."[34] Administrative Law Judge Marku recounted the record evidence of Ms. Rich's mental health issues, but found "progress notes do not contain detailed mental status examination findings."[35] He noted the psychologist's finding

of "self-harm recurrent thoughts of death," and also noted Ms. Rich's case notes do not include this observation.[36] Administrative Law Judge Marku found Ms. Rich has "only mild difficulty" with short-term memory recall and exhibited "relatively intact attention and concentration," despite "a depressed and anxious affect" and "some restless motor behavior."[37]

Administrative Law Judge Marku "afforded little weight" to the findings in the medical report prepared by Michael Fischer, D.O.[38] He reasoned the minimal objective clinical findings, lack of contemporaneous treatment records, and inconsistency with the record as a whole did not support the severity described in Dr. Fischer's recommendations, including findings such as Ms. Rich's requirement of "time off-task of 25% or more of a workday.[39]" As to the residual functional capacity assessment by psychologist Joan Feinstein, Ph.D., Administrative Law Judge Marku "afforded little weight" to her finding of Ms. Rich's lack of useful ability to function and inability to meet competitive standards because Dr. Feinstein's "own treatment records do not contain significant objective findings to support such severe restrictions."[40] He also found Dr. Feinstein's findings inconsistent with the record as a whole. Contradictory evidence included consulting physician Dr. Russell Amundson's report finding Ms. Rich "appeared oriented in all spheres" and "denied suicidal and homicidal ideations,"[41] concluding Ms. Rich could perform activities like shopping, cooking, and handling papers and files.[42] Administrative Law Judge Marku also "afforded little weight" to the opinion of the Commissioner's evaluating psychologist, Joseph Primavera, Ph.D., finding Dr. Primavera's assessment of Ms. Rich's moderate to marked limitation in areas of mental functioning "relied heavily on [Ms. Rich's] subjective statements."[43] Administrative Law Judge Marku found residual functional capacity to find Ms. Rich could perform three jobs existing in significant numbers relying upon a vocational expert's testimony.[44]

Ms. Rich filed a request for review of Administrative Law Judge Marku's decision with the Appeals Council.[45] On July 6, 2018, the Appeals Council found no "basis for changing [Administrative Law Judge Marku's] decision," rendering Administrative Law Judge Marku's decision final.[46] The Appeals Council instructed Ms. Rich she could file a civil action within sixty days to obtain judicial review of Administrative Law Judge Marku's decision.[47]

Ms. Rich timely sought our judicial review of Administrative Law Judge Marku's decision. Ms. Rich alleged unlawful denial of disability benefits.[48] In her March 26, 2019 brief supporting her request for review, Ms. Rich argued, for the first time, the administrative proceedings must be remanded because the Social Security Administration resolved her case by an administrative law judge not properly appointed under Article II of the Constitution.[49] Ms. Rich also alleged Administrative Law Judge Marku erroneously rejected the opinions of Ms. Rich's treating doctors and of the Commissioner's own consultative psychologist and seeks reversal of the Commissioner's decision and an award of benefits.[50]

## II. Analysis

Ms. Rich challenges the Commissioner's denial of her disability claims on three grounds. She first argues we must remand to allow review by a constitutionally appointed administrative law judge under a June 21, 2018 Supreme Court decision, *Lucia v. Securities and Exchange Commission*,[51] because Administrative Law Judge Marku heard her case without a proper constitutional appointment. She also argues the Commissioner failed to carry her burden to rebut Administrative Law Judge Marku's finding of Ms. Rich's inability to return to past relevant work. She lastly argues Administrative Law Judge Marku erroneously rejected the record evidence of Ms. Rich's treating physician, treating psychologist, and consultative psychologist.

## A.    We remand consistent with *Culclasure*.

Ms. Rich relies on the Appointments Clause of Article II of the Constitution and our Supreme Court's interpretation of this Clause in *Lucia* to argue Administrative Law Judge Marku—an "inferior Officer"—could not adjudicate her claim without proper constitutional appointment. Ms. Rich argues remand to a constitutionally appointed officer is an appropriate remedy. The Commissioner does not argue Administrative Law Judge Marku adjudicated Ms. Rich's claim after proper constitutional appointment. But the Commissioner argues Ms. Rich fails *Lucia*'s mandate of a "timely challenge" to the constitutional validity of Administrative Law Judge Marku's decision because she did not raise the Appointments Clause argument during the administrative process.

A little over five months ago, in *Culclasure v. Commissioner of Social Security*,[52] we extensively analyzed this same issue and held a social security claimant did not forfeit his right to challenge an Administrative Law Judge's appointment even when failing to raise the issue at the administrative level.[53] We remanded the case to the Commissioner for a hearing before another properly appointed administrative law judge.[54] We will not duplicate our reasoning here. But for the reasons stated in our *Culclasure* opinion, we remand for a hearing before a properly appointed administrative law judge.

## B.    We deny Ms. Rich's other challenges to Administrative Law Judge Marku's decision.

Unlike the issues we faced in *Culclasure*, Ms. Rich alternatively argues we must reverse Administrative Law Judge Marku's decision and direct an award of benefits for two substantive reasons: The Commissioner did not meet her burden of showing Ms. Rich could perform other work within her residual functional capacity and the Administrative Law Judge's decision lacks substantial evidence supporting his residual functional capacity finding. Given the present appeals

before our Court of Appeals, which may find remand based on the Appointments Clause is not required, we today address Ms. Rich's alternative arguments. We find, absent remand based on the constitutional challenge, Ms. Rich has not met her burden and we would deny her requested relief.

An administrative law judge applies a five-step sequential evaluation process to determine if a claimant has a disability. At step one, the claimant must prove she is not working at a "substantial gainful activity."[55] At step two, the claimant must prove she has a "severe impairment."[56] At step three, the administrative law judge must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments.[57] If the claimant's impairment matches or equals a listing, he is presumed disabled.[58] If the impairment does not match or equal a listing, then at step four, the claimant must show he does not have the "residual functional capacity" to work.[59] At step five, the Social Security Administration must determine whether the claimant is capable of performing jobs existing in significant numbers in the national economy.[60]

When reviewing the Commissioner's final decision denying a claimant's application for benefits, we limit our review to whether the final decision-maker's findings are supported by substantial evidence on the record.[61] "We must affirm the ALJ so long as his conclusions are supported by substantial evidence."[62] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[63] "It is 'more than a mere scintilla but may be somewhat less than preponderance of the evidence.'"[64] "We review the record as a whole to determine whether substantial evidence supports a factual finding."[65]

1. **The Commissioner carried her burden of rebuttal when the administrative law judge found Ms. Rich unable to return to her past relevant work.**

As our reasoning below shows, the Commissioner carried her burden of rebuttal after Administrative Law Judge Marku found Ms. Rich unable to return to her past relevant work at step four of the sequential evaluation process. Administrative Law Judge Marku properly evaluated the reports of medical professionals and substantial evidence supports the finding of residual functional capacity. We deny Ms. Rich's claim.

2. **Administrative Law Judge Marku did not erroneously reject the reports of the treating physician, treating psychologist, and the consultative psychologist when evaluating residual functional capacity.**

Ms. Rich argues Administrate Law Judge Marku erroneously rejected the medical opinions of her treating physician, Dr. Fischer, her treating psychologist, Dr. Feinstein, and a consulting psychologist, Dr. Primavera, without adequate explanation. She claims this erroneous rejection of medical opinions renders Administrative Law Judge Marku's residual functional capacity finding unsupported by substantial evidence. In response, the Commissioner argues Administrative Law Judge Marku appropriately weighed the opinions of the physician and psychologists, according the opinions "little weight" because the medical professionals' minimal objective clinical findings and the record did not support the opinions.

Social Security Administration regulations instruct us on an administrative law judge's proper residual functional capacity analysis. The Social Security Administration requires an administrative law judge "assess [the claimant's] residual functional capacity based on all of the relevant medical and other evidence."[66] In general, the claimant is "responsible for providing the evidence [the administrative law judge] will use to make a finding" about residual functional capacity.[67] The administrative law judge must nevertheless ensure he has "develop[ed the

claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."[68] The administrative law judge "will consider any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."[69] The Commissioner instructs the administrative law judge to "consider descriptions and observations of [the claimant's] limitations from [the claimant's] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by the [claimant], [the claimant's] family, neighbors, friends, or other persons."[70]

In *Chandler v. Commissioner of Social Security*,[71] our Court of Appeals considered whether substantial evidence supported an administrative law judge's residual functional capacity findings. The claimant in *Chandler* filed for disability insurance benefits and supplemental security income after suffering alleged reflexive sympathetic dystrophy from a fall. The claimant produced evidence supporting her disability claims, presenting "numerous medical records describing treatments and evaluations" including from a nurse practitioner who believed the claimant "was permanently disabled."[72] But a state agency medical consultant reviewed the claimant's medical records and concluded the claimant retained the ability to perform many basic functions. A year after this medical consultant's report, the administrative law judge, relying heavily on the consultant's report, denied the claimant's claims. The claimant sought judicial review. On a petition for review, Judge Muir rejected the administrative judge's decision because he found the state medical consultant's report not sufficiently up-to-date and, after discrediting this evidence, found: "there is no timely and relevant opinion by a medical expert which support[ed] the [residual functional capacity] determination."[73]

Our Court of Appeals considered whether Judge Muir improperly required medical expert evidence to support the residual functional capacity determination. Our Court of Appeals instructed: "The [administrative law judge]—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."[74] Our Court of Appeals concluded the administrative law judge based her decision on substantial evidence when considering the state medical consultant's report and other evidence.

Our Court of Appeals also instructs: "[s]urveying the medical evidence to craft an RFC is part of the [administrative law judge]'s duties."[75] And, an administrative law judge is "not bound to accept the opinion or theory of any medical expert," but instead may "weigh the medical evidence and draw [her] own inferences. "[76]

Administrative Law Judge Marku's residual functional capacity analysis is supported by substantial evidence. He considered medical and mental health records and independently reached an appropriate residual functional capacity decision based on the evidence. Our Court of Appeals in *Chandler* directs the administrative law judge, not a treating or examining physician, to determine residual functional capacity by looking to medical opinion.[77] This is exactly what Administrative Law Judge Marku did.

Administrative Law Judge Marku appropriately evaluated Dr. Fischer's report and opinions. He afforded "little weight" to Dr. Fischer's opinion stating Ms. Rich had severely limited use of her hands, fingers and arms and would need extensive breaks from work. Administrative Law Judge Marku explained Mr. Fischer's own progress notes "do not contain evidence of significant physical examination findings."[78] Inconsistency between a treating physician's opinion and his own treatment notes can support an administrative law judge's decision to afford the opinion less weight.[79] Administrative Law Judge Marku also cited discrepancy with the record as

a whole for his decision to afford Dr. Fischer's opinion little weight. Other medical professionals' reports "note[d] good range of motion of the neck with only mild discomfort, full strength of the upper extremities, intact sensation and symmetric reflexes in the upper extremities, and a normal gait."[80] And Ms. Rich's own testimony showed her ability to cook, clean, do laundry, and drive short distances.[81] Administrative Law Judge Marku based his evaluation of Dr. Fischer's report on substantial evidence.

Ms. Rich argues Administrative Law Judge Marku failed to properly evaluate the symptoms of fibromyalgia.[82] She argues the Social Security Policy Interpretation Ruling on Fibromyalgia,[83] neither cited nor summarized by Administrative Law Judge Marku, provides a clear explanation of fibromyalgia's symptoms—symptoms exhibited by Ms. Rich. But Administrative Law Judge Marku's failure to cite the Policy Interpretation Ruling on Fibromyalgia does not mean he misinterpreted its instructions. The Policy Interpretation Ruling on Fibromyalgia does not mandate a disability finding if evidence establishes a diagnosis of fibromyalgia, but states: "Once we establish that a person has [fibromyalgia], we will consider it in the sequential evaluation process to determine whether the person is disabled."[84] Administrative Law Judge Marku discussed Ms. Rich's fibromyalgia throughout his five-step sequential evaluation assessment, ultimately concluding Ms. Rich's fibromyalgia does not prevent her from having the residual functional capacity to perform light work.

Ms. Rich also argues Administrative Law Judge Marku's exclusion of a reference to Dr. Fischer's "Clinical Assessment of Pain" report violated his duty to analyze all probative evidence.[85] But Administrative Law Judge Marku discussed two out of the three pages of the exhibit and concluded Dr. Fischer's opinion warranted little weight.[86] Where a physician fails to provide an explanation supporting his opinion, this "by itself would justify the [administrative law

judge's] decision to accord [it] little weight."[87] This is especially the case when the opinion is provided in a checklist form, as in the Clinic Assessment of Pain report, "which require[s] only that the completing physician 'check a box or fill in a blank,' rather than provider a substantive basis for the conclusions stated."[88] Such forms provide "'weak evidence at best' in the context of a disability analysis."[89]

Administrative Law Judge Marku afforded "little weight" to Dr. Feinstein's report, including her conclusion Ms. Rich was "completely disabled at [that] time,"[90] because "Dr. Feinstein's own treatment records do not contain significant objective findings to support such severe restrictions."[91] Dr. Feinstein's notes report Ms. Rich's subjective complaints, but do not provide objective mental status findings.[92] Administrative law judges must afford medical opinions supported by medical signs and tests more weight than opinions unsupported by evidence.[93] "Subjective complaints must be supported by some objective medical evidence."[94] Administrative Law Judge Marku described how Dr. Feinstein's opinion was "not consistent with the record as a whole, including the objective findings noted by the consultative examination and the claimant's self-reported daily activities."[95] For example, consulting physician Dr. Amundson noted Ms. Rich "maintained good eye contact," "appeared oriented in all spheres," had "no evidence of impaired judgment," had "no significant memory impairment," displayed a normal affect, and "denied suicidal and homicidal ideations."[96] His medical source statement concluded Ms. Rich could perform activities like shopping, cooking, and handling papers and files.[97] Contradictory evidence provided by examining psychologists and Ms. Rich's own testimony provide substantial evidence supporting Administrative Law Judge Marku's conclusion.[98]

Substantial evidence supports Administrative Law Judge Marku's decision to "afford little weight" to Dr. Primavera's opinion. Dr. Primavera found a range of "moderate" to "marked"

limitation in areas of mental functioning,[99] a finding Administrative Law Judge Marku concluded relied heavily on Ms. Rich's subjective statements.[100] Administrative Law Judge Marku also found Dr. Primavera's opinion contradicted the record as a whole. As described, Administrative Law Judge Marku had substantial evidence to support this conclusion.

In reaching his conclusion, Administrative Law Judge Marku evaluated hundreds of pages of medical records and adequately explained his reasoning for finding Ms. Rich's residual functional capacity to perform light work. The administrative record contained medical opinions concluding Ms. Rich has serious limitations—those created by Drs. Fischer, Feinstein, and Primavera—but it also contained medical tests and findings concluding Ms. Rich could perform light work. Administrative Law Judge Marku considered the medical findings and opinions in the record and came to a reasonable conclusion. We deny Ms. Rich's claim.

## III. Conclusion

We remand to allow Ms. Rich's claim to be heard by a constitutionally appointed administrative law judge under our reasoning in *Culclasure*. We deny Ms. Rich's other challenges. But should our Court of Appeals find the district court erred in *Bizarre v. Berryhill*, No. 19-1773 (3d Cir.) and *Cirko v. Berryhill*, No. 19-1772 (3d Cir.) and thus possibly alter our analysis in *Culclasure* regarding the Appointments Clause, we find Administrative Law Judge Marku's decision is supported by substantial evidence and would be upheld but for the constitutional defect. In the accompanying Order, we grant Ms. Rich's claim in part and remand to the Commissioner but stay further progress before the Commissioner until a ruling from our Court of Appeals in the consolidated appeals in *Bizarre v. Berryhill*, No. 19-1773 (3d Cir.) and *Cirko v. Berryhill*, No. 19-1772 (3d Cir.).

---

[1] *Cortese v. Comm'r of Soc. Sec.*, No. 18-3437, 2019 WL 4308859 (E.D. Pa. Sept. 11, 2019).

[2] Administrative Record ("R"), ECF Doc. No. 10, at 140.

[3] R. at 140, 179.

[4] R. at 86-90.

[5] R. at 31-68. Josh Leventhal, Esquire represented Ms. Rich in the administrative process. Sharon Gornstein, Esquire now represents Ms. Rich.

[6] Soc. Sec. Emergency Message-18003 REV 2, Effective Date: Aug. 6, 2018: https://secure. ssa.gov./appsl 0/reference.nsf/links/08062018021025PM.

[7] R. at 43.

[8] R. at 40.

[9] R. at 53-54.

[10] R. at 44, 45.

[11] R. at 45.

[12] *Id.*

[13] *Id.*

[14] R. at 57.

[15] R. at 46.

[16] R. at 55-56.

[17] R. at 37.

[18] R. at 44.

[19] R. at 51.

[20] *Id.*

[21] *Id.*

[22] R. at 50.

[23] R. at 913-915, 970-972.

[24] R. at 236-912, 916-969.

[25] R. at 11-30.

[26] R. at 16.

[27] R. at 24.

[28] R. at 18.

[29] R. at 19-20.

[30] R. at 20.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] R. at 21.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] R. at 22.

[39] *Id.*

[40] R. at 23.

[41] R. at 877.

[42] R. at 883.

[43] R. at 23-24.

[44] R. at 25.

[45] R. at 136-137.

[46] R. at 1-3.

[47] *Id.*

[48] ECF Doc. No. 1 at 2.

[49] ECF Doc. No. 17 at 4-6.

[50] *Id.* at 8-24.

[51] --- U.S.---, 138 S. Ct. 2044, 201 L. Ed. 2d 464 (2018).

[52] 375 F.Supp.3d 559 (E.D. Pa. 2019).

[53] *Id.* at 574.

[54] Our Court of Appeals will consider this Appointments Clause issue in a consolidated appeal of two cases we partially relied upon in *Culclasure: Bizarre v. Berryhill,* No. 19-1773 (3d Cir.); *Cirko v. Berryhill,* No. 19-1772 (3d Cir.). *See* Clerk Order, *Bizarre v. Berryhill,* No. 19-1773 (3d Cir. May 15, 2019); *Cirko v. Berryhill,* No. 19-1772 (3d Cir. May 15, 2019).

[55] *Ramirez v. Barnhart,* 372 F.3d 546, 550 (3d Cir. 2004).

[56] *Id.*

[57] *Id.*

[58] *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 119 (3d Cir. 2000).

[59] *Ramirez,* 372 F.3d at 550.

[60] *Id.*

[61] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198,200 (3d Cir. 2008).

[62] *Zirnsak v. Colvin,* 777 F.3d 607, 610 (3d Cir. 2014) (quoting 42 U.S.C. § 405(g)).

[63] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[64] *Zirnsak,* 777 F.3d at 610 (quoting *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)).

[65] *Zirnsak,* 777 F.3d at 610 (quoting *Schaudeckv. Comm'r of Soc. Sec.,* 181 F.3d 429, 431 (3d Cir. 1999)).

[66] 20 C.F.R. § 404.1545 (3).

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] 667 F.3d 356 (3d Cir. 2011).

[72] *Id.* at 359.

[73] *Id.*

[74] *See* 20 C.F.R. §§ 404.1527(e)(l), 404.1546(c).

[75] *Titterington v. Barnhart,* 174 Fed. App'x 6, 11 (3d Cir. 2006).

[76] *See Kertesz v. Crescent Hills Coal Co.,* 788 F.2d 158, 163 (3d Cir. 1986); *see also Chandler v. Commissioner of Social Security,* 667 F.3d 356, 361 (3d Cir. 2011).

[77] *See Northington v. Berryhill,* No. 17-2922, 2018 WL 2159923, at *1 n.1 (E.D. Pa. May 10, 2018).

[78] R. at 22.

[79] 20 C.F.R. § 404.1527(c)(2); *see Hoyman v. Colvin*, 606 Fed. App'x 678, 680 (3d Cir. 2015); *see also Sanborn v. Colvin*, 2014 WL 3900878, at *10 (E.D. Pa. Aug. 11, 2014).

[80] R. at 22.

[81] R. at 31-68.

[82] ECF Doc. No. 17 at 14-17.

[83] Social Security Ruling 12-2p, 77 Fed. Reg. 43640 (July 25, 2012).

[84] *Id.* at (V).

[85] ECF Doc. No. 17 at 11.

[86] R. at 22.

[87] *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 119 (3d Cir. 2012); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (opinion may be given "more or less weight depending upon the extent to which supporting explanations are provided").

[88] *Smith v. Astrue*, 359 Fed. App'x 313, 316 (3d Cir. 2009) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

[89] *Id.*

[90] R. at 23.

[91] *Id.*

[92] R. at 894-908.

[93] 20 C.F.R. § 404.1527(c)(3), (4).

[94] *Amadeo v. Comm'r of Soc. Sec.*, 50 Fed. App'x 99, 103 (3d Cir. 2002).

[95] R. at 23.

[96] R. at 877.

[97] R. at 883.

[98] In her request for review, Ms. Rich's reliance on *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003), conflates Ms. Rich's medical problems: *Green-Younger* addresses fibromyalgia's unique conditions not necessitating objective medical evidence, while Dr. Feinstein's psychological opinions address Ms. Rich's mental health problems such as depression and anxiety. *Green-Younger* does not suggest administrative law judges must provide equal or heavier weight to mental health experts' subjective findings than their objective findings. Such a holding would contradict 20 C.F.R. § 404.1527(c)(3), (4).

[99] R. at 886-896.

[100] R. at 24.