IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH RICH | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  18-3744 |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                        **August 6, 2020**

Social Security claimant Elizabeth Rich persuaded us to remand the Commissioner's Order denying her disability benefits because the Commissioner did not properly appoint the administrative law judge who decided her case under the Appointments Clause.  We rejected her arguments concerning the substantial evidence cited by the administrative law judge in denying benefits.  But we ordered remand after studying and eventually rejecting the Commissioner's arguments based on precedent in this District and nationally. Our Court of Appeals later affirmed the same sound reasoning we adopted in this case.  After winning on this close call, Ms. Rich now seeks attorney's fees as a prevailing party under the Equal Access to Justice Act.  Our standard today is not whether Ms. Rich won remand; the standard is whether the Commissioner's arguments opposing her motion for remand based on the Appointments Clause lacked substantial justification. Following study of the arguments as to whether the Commissioner lack substantial justification both in the administrative process and before us, we find the Commissioner meets his burden of showing substantial justification.  There is no basis for a fee award to Ms. Rich under the Act.  We deny her Motion for reasonable fees.

## I.     Background from the administrative record

Elizabeth Rich sought disability insurance benefits alleging, as of a disability onset date of February 18, 2015,[1] she suffers from fibromyalgia, anxiety and panic attacks, depression, interstitial cystitis, pelvic floor dysfunction, migraines, irritable bowel syndrome, chronic fatigue syndrome, sinusitis, and acid reflux.[2]  The Social Security Administration denied her claim on July 22, 2015.[3]  At Ms. Rich's request, Social Security Administrative Law Judge Jay Marku held a hearing on April 12, 2017 with Ms. Rich, her counsel, and a vocational expert.[4]  By April 12, 2017, the Acting Social Security Commissioner had not ratified the appointments of the Social Security Administration's administrative law judges, including Judge Marku.[5]   But Ms. Rich did not challenge Judge Marku's fitness to adjudicate her claim or to hold a hearing.

On July 18, 2017, Judge Marku denied Ms. Rich's application for disability insurance benefits.[6] Judge Marku found Ms. Rich had several "severe impairments," including cervical degenerative disease and radiculopathy, fibromyalgia, interstitial cystitis, pelvic floor dysfunction, depressive disorder, generalized anxiety disorder, panic attack disorder, and social phobia.[7]  He also found Ms. Rich unable to perform her past relevant work, following the testimony of a vocational expert.[8] But Judge Marku found Ms. Rich had the residual functional capacity to perform light work and denied her claim.[9]  Ms. Rich filed a request for review of Judge Marku's decision with the Appeals Council.[10]

While Ms. Rich's appeal remained pending before the Appeals Council, the Supreme Court decided *Lucia v. Securities and Exchange Commission* which addressed whether administrative law judges within the Securities and Exchange Commission could preside over cases if they were not constitutionally appointed.[11]   In *Lucia*, the Securities and Exchange Commission charged investment advisor Raymond Lucia for violating securities laws and assigned the case to

Administrative Judge Cameron Elliot.[12]  Administrative Law Judge Elliot issued fact findings and decided Mr. Lucia's conduct violated securities laws.[13]  Mr. Lucia appealed Administrative Law Judge Elliot's decision to the Securities and Exchange Commission and argued the entire administrative proceeding was invalid because Administrative Law Judge Elliot had not been constitutionally appointed.[14]  The Commission rejected this argument, and the parties disputed this issue until ripe for the Court's review.

The Court held administrative law judges working for the Securities and Exchange Commission, including Administrative Law Judge Elliot, are "inferior officers" who must be appointed consistent with the Appointments Clause of the United States Constitution.[15]  And because Mr. Lucia made a "timely challenge to the constitutional validity" of Judge Elliot's appointment, the Court awarded Mr. Lucia a new hearing before a different, constitutionally appointed administrative law judge.[16]

Ms. Rich did not amend her request to review to the Appeals Council after the Court's *Lucia* decision.  On July 6, 2018, the Appeals Council found no "basis for changing [Judge Marku's] decision," rendering Judge Marku's decision final.[17]  The Appeals Council instructed Ms. Rich she could file a civil action within sixty days to obtain judicial review of Judge Marku's decision.[18]

On July 10, 2018, the President issued an Executive Order excepting all administrative law judges appointed under 5 U.S.C. § 3105[19] from competitive service selection procedures.[20] The Executive Order noted the "expanding responsibility for important agency adjudications, and as recognized by the Supreme Court in *Lucia*, at least some and perhaps all administrative law judges are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause, which governs who may appoint such officials."[21] The Acting Social Security Commissioner then

"reappointed the agency's administrative judges, including both the [administrative law judges] and the Administrative Appeals Judges of the [Administration's] Appeals Council, under her own authority."[22]

Ms. Rich timely sought our judicial review of Judge Marku's decision. Before Ms. Rich filed her brief, another claimant for benefits from the Social Security Administration in *Culclasure v. Commissioner of Social Security*, asked us to determine whether a claimant must contest the constitutional appointment status of the deciding administrative judge—"an Appointments Clause challenge"—during administrative proceedings or can wait to argue for reversal on this basis in federal court. We concluded a claimant does not need to raise an Appointments Clause challenge during the administrative proceedings to lodge a challenge on this basis in federal court.[23] But our view did not represent a consensus on this question at the time. Other colleagues thoughtfully analyzed the same issues and concluded a claimant must raise the Appointments Clause challenge at the administrative level or the claimant waives the ability to raise this issue in federal court.[24] The Commissioner appealed unfavorable rulings, including our *Culclasure* decision, to our Court of Appeals.[25]

In Ms. Rich's March 26, 2019 brief supporting her request for review, Ms. Rich argued, for the first time, the administrative proceedings must be remanded because the Social Security Administration resolved her case by an administrative law judge not properly appointed under the Constitution.[26] Ms. Rich also argued Judge Marku erroneously rejected the opinions of Ms. Rich's treating doctors and of the Commissioner's own consultative psychologist and seeks reversal of the Commissioner's decision and an award of benefits.[27] The Commissioner responded by arguing Ms. Rich forfeited her argument under the Appointments Clause when she failed to raise this

argument at the administrative level; and, the Commissioner argued substantial evidence supported Judge Marku's decision.[28]

On September 23, 2019, we remanded consistent with our earlier decision in *Culclasure*, reasoning Ms. Rich did not forfeit her Appointments Clause challenge by failing to raise the issue at the administrative level.[29]   We concluded the remedy is a new hearing before a different, constitutionally appointed administrative law judge.[30]   But after studying her arguments and the record, we denied Ms. Rich's other substantive challenges to Judge Marku's decision.[31]

On January 23, 2020, our Court of Appeals in *Cirko v. Commissioner of Social Security* held "exhaustion of Appointments Clause claims is not required in the [Social Security Administration] context."[32]   Our Court of Appeals affirmed the proper remedy for an Appointments Clause violation is a new hearing before a different, constitutionally appointed administrative law judge.[33]   After this decision, we remanded Ms. Rich's case to the Social Security Administration for further proceedings.[34]

## II.    Analysis

Ms. Rich's counsel now moves for her reasonable attorney's fees having successfully persuaded us to remand for a new hearing.  She succeeded before us on her Appointments Clause challenge. She did not succeed on the substantive challenge to Judge Marku's findings.

As we recently explained in *Cortese v. Commissioner of Social Security*,[35] our standard for awarding fees is different in cases against the United States than it may be in civil rights cases. Congress, by enacting the Equal Access to Justice Act, allows us to award fees to a "prevailing party" unless we "find[] that the position of the United States was substantially justified or that special circumstances make an award unjust."[36]   There is no dispute Ms. Rich won remand.

To defend against Ms. Rich's request for fees, the Commissioner must show his position was substantially justified at the time he presented it.[37]  The term "substantially justified" does not mean "justified to a high degree," "but rather 'justified in substance or in the main,' that is, justified to a degree that could satisfy a reasonable person."[38]  To prove his position could satisfy a reasonable person, the Commissioner must demonstrate: "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced."[39]  The Commissioner must substantially justify his position "in both the underlying agency proceeding as well as in the federal court proceeding[.]"[40] Our Court of Appeals instructs "when we decide whether the government's litigation position is substantially justified, the [Equal Access to Justice Act] . . . favors treating a case as an inclusive whole rather than as atomized line items[.]"[41]  We "must not assume that the government's position was not substantially justified because the government lost on the merits."[42]

Ms. Rich challenges the Commissioner's justification for his actions during the administrative and federal court proceedings.  The Commissioner opposes Ms. Rich's motion arguing he possessed a substantial justification in each phase. After separately reviewing the Commissioner's position in each phase, we agree with the Commissioner.

### A.    The Commissioner shows substantial justification for his position in the administrative process.

The Commissioner asserts his position at the administrative level was substantially justified because (1) Ms. Rich did not raise an Appointments Clause challenge; (2) the Commissioner did not need to raise the Appointments Clause issue *sua sponte*; and, (3) because Ms. Rich did not raise an Appointments Clause challenge, the Commissioner did not need to address this issue in conducting the proceeding.  Ms. Rich does not specifically respond to the Commissioner's argument.

6

The timeline of events is important when addressing the Commissioner's justification at the administrative level. Ms. Rich filed for benefits in 2015. She received a video hearing before Judge Marku in April 2017. Judge Marku denied Ms. Rich's benefit request a few months later. Ms. Rich then appealed this decision to the Appeals Council. The Supreme Court decided *Lucia* on June 21, 2018—holding administrative law judges in the Securities and Exchange Commission are "inferior officers" who must be appointed consistent with the Appointments Clause. The Commissioner then affirmed Judge Marku's decision two weeks after *Lucia.* Ms. Rich did not raise the Appointments Clause issue to Judge Marku or to the Appeals Council.

In *Culclasure*, the entirety of the administrative proceedings occurred before *Lucia*; under those facts and circumstance, we concluded the Commissioner easily acted consistent with "settled law."[43] We explained, "[b]efore *Lucia*, the constitutional appointment status of Social Security administrative law judges had not been declared. While we expect the Commissioner respond to a claimant's constitutional concerns when raised and to conform to 'settled law' consistent with his oath to defend the Constitution, we do not expect nor require the Commissioner to predict how the judiciary will interpret the Constitution in conducting administrative proceedings among varied interpretations."[44]

Our reasoning from *Culclasure* supports the Commissioner's substantial justification for allowing Judge Marku to adjudicate Ms. Rich's claim. But today's issue is slightly different than *Culclasure* because Ms. Rich's case remained pending before the Appeals Council after the Court decided *Lucia*. So we must decide whether the Commissioner held an affirmative *sua sponte* duty to raise an Appointments Clause challenge and remand Ms. Rich's case while pending before the Appeals Council. Our colleague the Honorable Elizabeth T. Hey recently reasoned an agency will lack a substantial justification for its position if the position "conflict[s] with a clearly settled legal

principle articulated consistently by the courts" or if it constitutes "bureaucratic arbitrariness."[45] We see no clearly settled legal principle or bureaucratic arbitrariness in the Commissioner's decision not to raise the Appointments Clause issue *sua sponte*. We see no support imposing a *sua sponte* obligation on the Commissioner to raise Appointments Clause challenges.   The Commissioner acted reasonably at the administrative level.  We cannot award fees to Ms. Rich on this ground.

### B.    The Commissioner shows substantial justification for his position in federal court.

We then consider whether the Commissioner had a reasonable basis in law for claiming Ms. Rich forfeited her Appointments Clause challenge.  The Commissioner argues he meets his burden of proving reasonableness before us because: (1) Ms. Rich did not raise her Appointments Clause challenge during administrative proceedings; (2) many courts found Social Security Administration claimants must raise an Appointments Clause challenge during administrative proceedings; and (3) Ms. Rich did not raise an Appointments Clause challenge during her administrative proceedings, so she forfeited the Appointments Clause argument.  Ms. Rich does not specifically respond to the Commissioner's argument.   But we independently conclude the first or third elements are plainly met: the Commissioner held a reasonable basis in truth for his alleged facts and a reasonable connection between the alleged facts and his legal theory.

As in our decisions in *Cortese* and *Culclasure*, the question today turns on the second element—whether the Commissioner's legal position in federal court was substantially justified. And as in *Cortese* and *Culclasure*, the Commissioner defends the reasonableness of his asserted legal theory two ways.  First, he cites the many courts accepting his position at the time he asserted this legal theory.[46]  And second, though he acknowledges our Court of Appeals later disagreed with his legal theory in *Cirko*, the Commissioner maintains our Court of Appeals appreciated in

the *Cirko* decision this Appointments Clause issue to be an unsettled area of the law without clear binding precedent before its precedential ruling.

We look to instructive precedent to aid our review of when the United States possesses a reasonable basis in law for the theory it advances in federal court.  We look first to *Johnson v. Gonzales*.[47]  In *Johnson*, Liberia native Jimmy Johnson fled Liberia after being forcibly recruited into and then deserting the army of the National Patriotic Front of Liberia.  He sought asylum in the United States.  The United States opposed Mr. Johnson's petition for asylum by relying on the Court's decision in *INS v. Elias-Zacarias*.[48]  In *Elias-Zacarias*, the Court held an asylum claim based on forcible recruitment into an army is "insufficient to demonstrate persecution on account of political opinion."[49]  But if an asylum seeker showed the army would impute to them political beliefs and persecute them for the imputed political beliefs, *Elias-Zacarias* did not control and other precedent, including *Lukwago v. Ashcroft*, supported granting asylum.[50]

During a second asylum hearing before the Board of Immigration Appeals, Mr. Johnson testified he feared persecution because he felt the army would impute political beliefs to him for his desertion. Without addressing this testimony, the Board denied Mr. Johnson's asylum application, determining Mr. Johnson "ha[d] failed to show that he was persecuted on account of his political opinion, and that his 'persecution' was not solely the result of the guerillas' aim in seeking to fill their ranks in order to carry out the war with the government and pursue their political goal, their political motive being irrelevant."[51]  Mr. Johnson appealed to our Court of Appeals arguing the Board's decision did not address Mr. Johnson's testimony during the second asylum hearing.  The United States, despite Mr. Johnson's testimony, continued to argue *Elias-Zacarias* barred asylum.

Our Court of Appeals vacated the Board's decision, reasoning the Board incorrectly relied on *Elias-Zacarias* because it overlooked Mr. Johnson's credible testimony about imputed political beliefs, which established a potential ground for asylum under *Lukwago*.[52] After this ruling, our Court of Appeals awarded fees to Mr. Johnson's counsel explaining: "Once the [United States] knew that [Mr.] Johnson had credibly testified that he feared persecution at least in part on account of an imputed political opinion, its continued reliance on *Elias–Zacarias* to argue that the [Board] erred in granting Johnson relief was no longer reasonable."[53]

We also consider a recent decision awarding fees to a claimant issued by our colleague, the Honorable Berle M. Schiller, in *Roberts v. Berryhill*.[54]  In *Roberts*, the Commissioner of Social Security defended his Administration's initial denial of widower's insurance benefits by arguing the Administration was not bound by an Orphans' Court order recognizing the claimant's same-sex marriage.  The Commissioner took this position even though the Social Security Act directed the Administration to extend widower's insurance benefits to a widow if "the courts of the state" would find a "valid marriage."[55]  The Commissioner argued the law allowed him to dispute the evidence relied on by the Orphans' Court judge in deciding the validity of the claimant's marriage. Judge Schiller, in deciding to award fees, explained the Commissioner's legal theory lacked support in Pennsylvania law and ran directly contrary to the language of the Social Security Act.[56]

In *Healey v. Leavitt*, a class of elderly and disabled Medicare beneficiaries facing the reduction of home health care services provided by home health agencies sued the Commissioner of the Department of Health and Human Services.[57]  The beneficiaries sought declaratory and injunctive relief seeking to require the Commissioner to compel the home health agencies to provide greater procedural protections to the beneficiaries before reducing or terminating home health services.  The beneficiaries argued the home health agencies' notice practices violated the

Medicare Act because the agencies failed to provide advanced written notice of termination, specific reasons for termination, or an explanation of how a beneficiary could demand coverage. The Commissioner did not respond by arguing the home health care agencies complied with the Medicare Act but instead argued the home health agencies were not operating as state actors and therefore did not need to comply with the Medicare Act. The Honorable Dominic J. Squarito entered judgment for the beneficiaries on this issue, accepting Magistrate Judge Thomas P. Smith's reasoning as to why the home health agencies were subject to the Medicare Act's notice requirements. The beneficiaries then moved for fees. The Commissioner did not argue a substantial justification for asserting home health agencies were excused from the Medicare Act's notice requirements. Judge Squarito awarded fees to the beneficiaries, concluding the Commissioner "failed to offer any justification for the Secretary's failure to require [home health agencies] to provide written notice of the termination of benefits prior to the onset of this litigation."[58]

　　We contrast *Johnson*, *Roberts*, and *Healy*—all cases where the United States failed to offer valid precedential support or a reasonable statutory interpretation supporting its defense—with two cases where the United States offered reasonable legal justifications. In *McLaughlin v. Hagel*, servicemembers sued the Secretary of the Department of Defense challenging the constitutionality of the Secretary's practice of applying the Defense of Marriage Act to same-sex military spouses under Section 3 of the Act. Eight months before the servicemembers filed their challenge, President Obama "determined that classifications based on sexual orientation were subject to a heightened standard of scrutiny that [the Defense of Marriage Act] could not meet with respect to legally married, same-sex couples."[59] President Obama "ordered the Department of Justice to cease its legal defense of equal protection challenges [but] . . . in deference to Congress, the

President instructed the Executive Branch to continue to enforce Section 3 pending its possible repeal by Congress or a definitive verdict from the judicial branch."[60]

The Honorable Richard G. Stearns stayed the servicemembers' lawsuit awaiting the Court of Appeals for the First Circuit's review of similar challenges to Section 3.  Judge Stearns continued the stay until the Court decided *United States v. Windsor* where it held Section of the Defense of Marriage Act is unconstitutional as violative of the Equal Protection Clause.[61] Following *Windsor*, the Secretary agreed judgment should be entered in favor of the servicemembers but disputed the servicemembers' ability to recover attorney's fees.  Judge Stearns agreed with the Secretary.  He looked to *Windsor* where the Supreme Court observed President Obama's decision to allow Congress or the Supreme Court to determine the vitality of the law despite personal doubts demonstrated respect of separation-of-powers principles.  Judge Stearns explained the Court's *Windsor* decision did not discredit the Secretary's defense solely because the Court determined the Act's unconstitutionality after the servicemembers brought the lawsuit.

In *Center for Food Safety v. Burwell*, the Center for Food Safety sued the Secretary of the Department of Health and Human Services and the Commissioner of Food and Drugs claiming the Food and Drug Administration's failure to adopt a final rule regarding review of food additives violated the Administrative Procedure Act.[62]  The parties settled the dispute and agreed to have the Honorable Randolph Contreras enter a consent decree requiring the Food and Drug Administration to finalize the proposed rule and submit the proposed rule for publication. Following this resolution, the Center for Food Safety then moved for fees and costs under the Equal Access to Justice Act.

After confirming the Center for Food Safety's status as the prevailing party, Judge Contreras considered whether the defendants held a substantial justification for their position.

Judge Contreras, noting the merits are "quite relevant" to determining a legal justification, considered the merits of the dispute in detail.[63] While reviewing the merits, Judge Contreras considered whether the defendants could fairly argue their actions were not final agency action. Looking to the "inclusive whole" of the defendants' position, Judge Contreras concluded the defendants' legal position was substantially justified.[64] Judge Contreras concluded defendants' position "was not 'flatly at odds with the controlling case law'" and rejected a fee award.[65]

We see today's issue as more akin to *McLaughlin* and *Center for Food Safety* than *Johnson*, *Roberts*, or *Healy*. Our colleague, the Honorable Wendy Beetlestone, remarked on this same Appointments Clause issue in *Holmes v. Berryhill*: "Numerous district courts around the country, including courts within this district[,] had previously agreed with the Commissioner's position that Appointments Clause challenges are subject to exhaustion requirements."[66] The support for the Commissioner's legal position revealed courts reaching different but well-reasoned decisions about exhaustion requirements in the Social Security context. Unlike *Johnson*, the Commissioner reasonably relied on persuasive precedent from district courts around the country throughout this proceeding. Like *McLaughlin* and *Centers for Food Safety*, the Commissioner cited valid and legitimate legal explanations for pursuing his defense. And unlike *Roberts* or *Healy*, the Commissioner did not offer a novel but flawed reading or defense of a federal statute or regulation.

The Commissioner's main argument before us focused on Ms. Rich not presenting a "timely challenge" to the appointment of Judge Marku because, unlike *Lucia*, she did not raise the challenge at the administrative level. The ultimate question was one of *Lucia*'s reach. The Commissioner pointed to principles in caselaw arguing exhaustion. Even if this authority did not persuade us, as in *Center for Food Safety* and unlike *Johnson*, these citations did not run counter to controlling law. On this issue, we did not have the benefit of controlling law. We cannot

conclude the Commissioner is unreasonable because he cited to potentially unpersuasive authority to support a viable legal theory.

The Commissioner's legal position, as in *McLaughlin*, had a reasonable basis in law during the pendency of this action. As Judge Beetlestone explained in *Holmes*, the Commissioner's legal position does not become unreasonable solely because our Court of Appeals later adopted the alternative reasoning.[67] Our Court of Appeals' decision in *Cirko* confirms this question required parsing through lessons from persuasive precedent to reach a well-reasoned decision.[68] Reasonable minds, after study, did and could reach different conclusions. The Commissioner demonstrated substantial justification for his legal position opposing Ms. Rich's remand arguments.

## III.   Conclusion

The Commissioner meets his burden of proving a substantial justification for arguing Ms. Rich could not succeed on an Appointments Clause challenge after failing to raise the issue at the administrative level. Because Congress precludes us from awarding fees when the Commissioner meets his burden of demonstrating a substantial justification based on conflicting caselaw in an unsettled area at the time of the Commissioner's arguments before us, we must deny Ms. Rich's request for reasonable attorney's fees.

---

[1] Administrative Record ("R"), ECF Doc. No. 10, at 140.

[2] R. at 140, 179.

[3] R. at 86-90.

[4] R. at 31-68. Josh Leventhal, Esquire represented Ms. Rich in the administrative process. Sharon Gornstein, Esquire now represents Ms. Rich.

---

[5] Soc. Sec. Emergency Message-18003 REV 2, Effective Date: Aug. 6, 2018: https://secure.ssa.gov./appsl 0/reference.nsf/links/08062018021025PM.

[6] R. at 11-30.

[7] R. at 16.

[8] R. at 24.

[9] R. at 18.

[10] R. at 136-137.

[11] 138 S. Ct. 2044 (2018).

[12] *Id.* at 2049-50.

[13] *Id.* at 2050.

[14] *Id.*

[15] *Id.* at 2053-55.

[16] *Id.*

[17] R. at 1-3.

[18] *Id.*

[19] Section 3105 provides: "Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with section 556 and 557 of this Title. Administrative law judges shall be assigned to cases in rotation so far as practicable, and may not perform duties inconsistent with their duties and responsibilities as administrative law judges."

[20] Exec. Order No. 13843, 83 Fed. Reg. 32,755 (July 10, 2018).

[21] *Id.*

[22] *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020).

[23] *Culclasure v. Comm'r of Social Sec.*, 375 F. Supp. 3d 559, 570-72 (E.D. Pa. 2019). We also concluded, even if exhaustion did apply, we would excuse Mr. Culclasure's failure to exhaust because his administrative proceedings concluded before the Supreme Court's decision in *Lucia*. *Id.* at 572-73.

---

[24] *See, e.g.*, *Cox v. Berryhill*, No. 16-5434, 2018 WL 7585561 (E.D. Pa. Dec. 18, 2018) (concluding claimant waived Appointments Clause objection by failing to raise issue at the administrative level) (citing *Garrison v. Berryhill*, No. 17-302, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018); *Salmeron v. Berryhill*, No. 17-3927, 2018 WL 4998107, at *3 n.5 (C.D. Cal. Oct. 15, 2018); *Davidson v. Comm'r of Soc. Sec.*, No. 16-102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018); *Stearns v. Berryhill*, No. 17-2031, 2018 WL 4380984, at *4-5 (N.D. Iowa Sept. 14, 2018)).

[25] *Culclasure v. Comm'r of Social Sec.*, No. 18-1543, ECF Doc. No. 24.

[26] *Culclasure v. Comm'r of Social Sec.*, 375 F. Supp. 3d 559, 570-72 (E.D. Pa. 2019).

[27] *Id.* at 8-24.

[28] ECF Doc. No. 20.

[29] ECF Doc. No. 29.

[30] *Id.*

[31] *Id.*

[32] 948 F.3d 148, 153 (3d Cir. 2020).

[33] *Id.* at 154-55.

[34] ECF Doc. No. 32.

[35] No. 18-3437, 2020 WL 2745741, at *3 (E.D. Pa. May 27, 2020).

[36] 28 U.S.C. § 2412 (d)(1)(A).

[37] *Stokes v. Bowen*, 811 F.2d 814, 816 (3d Cir. 1987).

[38] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[39] *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998).

[40] *Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005).

[41] *Id.* at 211.

[42] *Kiareldeen v. Ashcroft*, 273 F.3d 542, 554 (3d Cir. 2001).

[43] *Culclasure v. Comm'r of Soc. Sec. Admin.*, No. 18-1543, 2020 WL 3172860, at *5 (E.D. Pa. June 15, 2020) (citing *Vacchio v. Ashcroft*, 404 F.3d 663, 675 (2d Cir. 2005)).

[44] *Id.*

[45] *Marant v. Saul*, No. 18-4832, 2020 WL 3402416, at *4 (E.D. Pa. June 19, 2020) (citing *Natural Resources Defense Council v. United States Environmental Protection Agency*, 703 F.2d 700, 712 (3d Cir. 1983);  *Wilks v. U.S. Dep't of Homeland Sec.*, No. 07-2171, 2009 WL 1542771, at *3 (M.D. Pa. June 2, 2009)).

[46] *See* ECF Doc. No. 34 at 2 n.1 (citing cases where courts concluded Appointments Clause argument must be exhausted in the Social Security Administration context).

[47] *Johnson*, 416 F.3d at 211.

[48] 502 U.S. 478 (1992).

[49] *Johnson*, 416 F.3d at 211 (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992)).

[50] *Id.* (citing *Lukwago v. Ashcroft*, 329 F.3d 157, 181 (3d Cir. 2003)).

[51] *Id.* at 207.

[52] *Johnson v. Ashcroft*, 117 F. App'x 849, 852 (3d Cir. 2004).

[53] *Johnson*, 416 F.3d at 212.

[54] *Roberts v. Berryhill*, 310 F. Supp. 3d 529 (E.D. Pa. 2018).

[55] *Id.* at 535.

[56] *Id.* at 536.

[57] *Healey v. Leavitt*, 485 F.3d 63 (2d Cir. 2007).

[58] *Id.* at 67.

[59] *McLaughlin v. Hagel*, 987 F. Supp. 2d 132, 133 (D. Mass. 2013), *aff'd*, 767 F.3d 113 (1st Cir. 2014).

[60] *Id.*

[61] *Id.* at 134 (citing *United States v. Windsor*, 570 U.S. 744 (2013)).

[62] 126 F. Supp. 3d 114 (D.D.C. 2015).

[63] *Id.* at 123 (quoting *F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996)).

[64] *Id.* at 125-26.

[65] *Id.* at 126 (quoting *Hill v. Gould*, 555 F.3d 1003, 1006 (D.C. Cir. 2009).

[66] *Holmes v. Berryhill*, No. 19-784, 2020 WL 2126787, at *2 (E.D. Pa. May 5, 2020) (citing *Muhammad v. Berryhill*, 381 F. Supp. 3d 462, 469-70 (E.D. Pa. 2019); *Marchant on behalf of A.A.H. v. Berryhill*, No. 18-0345, 2019 WL 2268982, at *4 (E.D. Pa. May 28, 2019); *Sprouse v. Berryhill*, 363 F. Supp. 3d 543, 550 (D.N.J. 2019)).

[67] *Id.* at *3 (citing *Scarborough v. Principi*, 541 U.S. 401, 414 (2004)).

[68] *See, e.g.*, *Cirko*, 948 F.3d at 155 ("And while *Sims* does not dictate the answer, its lessons loom large.").